# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs, October 13, 2011

## IN RE: CAINE D.J.S.

**Appeal from the Juvenile Court for Greene County**
**No. J22650    Hon. Kenneth N. Bailey, Jr., Judge**

**No. E2011-01060-COA-R3-PT-FILED-NOVEMBER 21, 2011**

The Department of Children's Services petitioned the Trial Court to terminate the parental rights of the mother, DJ, and the presumptive father, TH, who was married to the mother at the time of the child's birth. Following an evidentiary hearing, the Trial Court terminated the parental rights of the mother DJ and her husband at the time of the child's birth, TH. Both parties appealed to this Court and we affirm the termination of the mother's parental rights and vacate the Judgment terminating TH's parental rights on the grounds that the statutory grounds for termination was not established by the evidence.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed in Part and Vacated in Part.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Crystal Goan, Esq., Bulls Gap, Tennessee, for the appellant, DJ.

Lauren Armstrong, Morristown, Tennessee, for the appellee, TH.

Robert E. Cooper, Jr., Attorney General and Reporter, William E. Young, Solicitor General, and Marcie E. Greene, Assistant Attorney General, Nashville, Tennessee, for the Tennessee Department of Children's Services.

**OPINION**

The child, Caine DJS was adjudicated dependent and neglected on June 29, 2010, and was taken into temporary custody via emergency petition. The child was born to DJ ("mother") in Indiana, and the mother named RS of Indiana as the father on the birth certificate. The mother at the time was married to TH.

The Department of Children's Services, (DCS) filed a Petition to Terminate Parental Rights, and named the mother, TH and RS as respondents. The Petition states that neither the mother nor RS had visited the child in the last four months, and that TH, who was incarcerated when the child was born, had also not visited the child. The Petition states that all respondents knew the child was in DCS custody, and that all respondents were offered visitation with the child.

The Petition further alleged that the mother and RS had abandoned the child by failing to support him, as they had not paid any support in the last four months. The Petition further states the mother abandoned the child by failing to provide a suitable home for him, and had failed to keep the Department apprised of her whereabouts, and that the mother was guilty of severe child abuse.

The Trial Court entered an Order on January 3, 2011, continuing the hearing because the respondents had not properly been served. DCS and the guardian ad litem then filed a Joint Motion to Determine Legal Status of TH and for Genetic/DNA Testing of TH.

TH filed a Response, stating that he and the mother were married when the child was born, and thus he was presumed to be the legal father. The Court ordered DCS to file a copy of the child's birth certificate, which lists RS as the father, and since RS had not been served, ordered service by publication.

A hearing was held on February 22, 2011, and the Court noted the mother and her attorney and TH and his attorney were the only respondents present, so the matter did not proceed against RS. At the conclusion of the evidentiary hearing, the guardian ad litem recommended that the mother and TH's rights be terminated.

After the hearing, the Court entered an Order Terminating their Parental Rights and Awarding Partial Guardianship. The Court found that there was a rebuttable presumption that TH was the father since he and the mother were married when the child was born, but that the presumption had been rebutted, and that TH had no rights to the child. The Court found clear and convincing evidence the mother and TH had abandoned the child by failing to visit for four months prior to the filing of the petition, for failing to support during that

same time period, and for failing to provide a suitable home.

Further, the Court found that it was in the child's best interests to terminate the mother and TH's rights, and that there was clear and convincing evidence that termination was in the child's best interests.

The mother and TH both filed Notices of Appeal. The issues presented are:

1. Whether the Trial court erred in finding it was in the best interests of the child to terminate the mother's parental rights?

2. Whether the Trial Court erred in finding that the presumption of TH's paternity had been rebutted?

3. Whether the Court erred in finding that DCS made reasonable efforts to aid TH?

4. Whether the Court erred in finding that it was in the best interests of the child to terminate TH's parental rights?

The mother argues that the Trial Court erred in finding that it was in the best interest of the child to terminate her parental rights. She does not take issue with the fact that grounds for termination were properly shown.

In determining whether termination is in the child's best interest, the courts are directed to consider the following factors:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5)     The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6)     Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. §36-1-113(I).

In this case, the evidence showed the mother had not made an adjustment of circumstance, conduct, or conditions as to make it safe for the child to be with her. The mother had no stable job, had moved numerous times (and been homeless at various points in the prior year), and when the case worker went to check on her home about one month before trial, she found it was inappropriate for a child as it had no running water and no working toilet, among other problems. The mother admitted that she had a criminal record involving public intoxication and DUI, and admitted that she drank alcohol but had never sought any type of A&D assessment or treatment. She further testified that she did not use drugs, although she admitted that she had lived for a while with the child with a man she described as a drug user and drug dealer.

The mother admitted that she had lived in numerous places since the child was born, including with three men, and with her father, and her sister, and with a "friend in Greeneville".

The mother never explained her long disappearances after the child came into custody of the Department or the periods of time the Department was unable to locate her, and never

explained why she did not stay in touch with the Department nor call to check on her child. The mother's other two children are in the care of an aunt, and the mother had done nothing to regain custody of those children.

Based on the evidence and statutory guidelines, there was clear and convincing evidence that termination of the mother's parental rights was in the best interest of the child, and we affirm the Trial Court's Judgment terminating the mother's parental rights.

As to termination of TH's parental rights, TH argues that he was the legal father of the child, and the presumption arising from his marriage to mother when the child was born was never properly rebutted. While the paternity/legitimation statutes speak in terms of a rebuttable presumption of paternity for a man married to the child's mother when the child is born (Tenn. Code Ann. §36-2-304), the adoption/termination statutes state that a person is a "legal parent" if he "is or has been married to the biological mother of the child if the child was born during the marriage . . .". Tenn. Code Ann. §36-1-102(28). These statutes explain that if a person is a legal parent, his rights must be terminated pursuant to Tenn. Code Ann. §36-1-113(g)(1-8, 10). Since TH was married to the mother at the time the child was born, he is the child's legal father and one of the grounds listed in Tenn. Code Ann. §36-1-113(g)(1-8, 10) must be proven to terminate his rights. *See In re Bernard T.*, 319 S.W.3d 586 (Tenn. 2010); *In re TKY*, 205 S.W.3d 343 (Tenn. 2006).

The Petition to Terminate filed in this case only alleged one ground for termination of TH's rights, i.e., abandonment by failure to visit. The Petition was filed on August 16, 2010, and TH stated that he was released from prison in June 2010. Thus, Tenn. Code Ann. §36-1-102(i)(A)(iv) would apply, which states that when "[a] parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child", then this shall constitute abandonment. In this case, the child was conceived and born during TH's incarceration, so there was no requisite four-month period before his incarceration for the Court to consider. Likewise, TH had only been out of prison for about two months when the Petition to Terminate was filed, so there was no requisite four-month period for the Court to consider at that juncture.

TH argues the Trial Court erred in finding that DCS made reasonable efforts to assist him in maintaining a suitable home for the child, but this ground for termination was not

alleged in the Petition. As we have previously held, a Trial Court cannot terminate parental rights based on a ground not alleged in the Petition. *In re Tristyn K.*, 2010 WL 2867179 (Tenn. Ct. App. July 22, 2010). The only ground alleged in the Petition for terminating TH's rights was abandonment for failure to visit, which, as we point out, could not be established at the time the Petition was filed. Accordingly, we vacate the Judgment of the Trial Court on this issue and remand for further proceedings, since the Department has custody of the child. The cost of the appeal is taxed equally to DJ and TH in our discretion.

_____
HERSCHEL PICKENS FRANKS, P.J.