# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs March 13, 2014

## IN RE KORY W. A.[1]

**Appeal from the Juvenile Court for Sullivan County**
**No. J38653     Hon. Mark Toohey, Judge**

_____

**No. E2013-02282-COA-R3-PT - Filed April 24, 2014**

_____

This is a termination of parental rights case in which the Tennessee Department of Children's Services filed a petition to terminate the parental rights of Father to the Child. Following a bench trial, the trial court found that clear and convincing evidence existed to support the termination of Father's parental rights based upon his incarceration. The court likewise found that termination of Father's parental rights was in the Child's best interest. Father appeals. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., C.J., and THOMAS R. FRIERSON, II, J., joined.

Nicholas A. Schaefer, Kingsport, Tennessee, for the appellant, Percy H.

Robert E. Cooper, Jr., Attorney General and Reporter, and Jordan Scott, Assistant Attorney General, General Civil Division, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

Claire A. Addlestone, Kingsport, Tennessee, guardian ad litem for the minor, Kory W. A.

_____

[1]This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

## OPINION

## I. BACKGROUND

Kory W. A. ("the Child") was born to Sharifah A. ("Mother") in July 2007. Mother failed to identify the Child's father on the birth certificate but later attested that Percy H. ("Father") was the Child's father. Percy H. never attempted to legitimate the Child as his own. The Tennessee Department of Children's Services ("DCS") removed the Child from Mother in December 2010. However, Father was not notified of any legal proceedings because DCS could not locate Father with the information provided by Mother. The Child was subsequently adjudicated as dependent and neglected.

On August 14, 2012, DCS filed a petition to terminate Mother and Father's parental rights.[2] Relative to Father, DCS alleged that he had abandoned the Child by failing to provide support and by failing to legitimate the Child. A few months later, DCS learned that Father was incarcerated in Georgia. Father had been convicted of kidnaping with bodily injury, family violence aggravated battery, and family violence aggravated assault and had received a sentence of life imprisonment for the kidnaping conviction on May 31, 2011. DCS allowed Father to participate in at least one permanency hearing until DCS amended the termination petition, removing the initial grounds and alleging that termination of Father's parental rights was appropriate based upon his incarceration pursuant to Tennessee Code Annotated section 36-1-113(g)(6).

A hearing was held on the termination petition at which Father participated via telephone conference. Priscilla Tiffany, the Child's DCS case manager, testified that Mother failed to list the Child's father on the Child's birth certificate and that she could not find a listing concerning the Child on the putative father registry. She related that Mother eventually identified Father and that Father admitted paternity when he was finally located. She recalled that Father had received a sentence of life imprisonment on May 31, 2011, when the Child was less than eight years old. She acknowledged that Father had appealed his convictions.

Relative to the Child, Ms. Tiffany testified that he had been placed in a foster home that was willing to adopt him. She claimed that the Child was "doing really well" after his foster parents addressed his educational and medical needs. She asserted that the Child did not have a relationship with Father and had not visited with Father in approximately three years. She conceded that Father was not located until after the Child had been in DCS

---

[2] Mother surrendered her parental rights to the Child and is not a party to this appeal.

custody for approximately two years. She explained that DCS was unaware that Father was incarcerated and that she investigated the locations that Mother provided. She related that Father had not maintained contact with the Child prior to or since his incarceration and that Father had not provided any support for the Child. She acknowledged a report in which Mother alleged that she received weekly support from Father but insisted that Mother asserted that she had never received support from Father. She claimed that Father had not provided any support since his incarceration.

Father testified that he first learned of his paternity of the Child in 2008. He related that he visited with the Child from 2008 until 2010, when he moved to Georgia to care for his father. He maintained contact with Mother after he moved and even offered to parent the Child on at least one occasion. He recalled that Mother refused his offer. He conceded that he never filed a petition to establish his paternity. He explained that he did not know how to file such a petition and that he did not have any money. He acknowledged that he never sought any information concerning the process of legitimatizing the Child.

Following the presentation of the above evidence, the trial court held that termination of Father's parental rights was supported by the statutory ground of incarceration pursuant to Tennessee Code Annotated section 36-1-113(g)(6). The court likewise found that termination of Father's parental rights was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Father as follows:

A. Whether clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(6).

B. Whether clear and convincing evidence supports the trial court's ruling that termination of Father's parental rights was in the Child's best interest pursuant to Tennessee Code Annotated section 36-1-113(i).

## III. STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988). This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004). "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)). "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002). Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97. A parent's rights may be terminated only upon

> (1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

> (2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c). "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149

S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

Tennessee Code Annotated section 36-1-113(g)(6) provides the grounds for termination of parental rights based upon a parent's incarceration. The applicable provision provides as follows:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

\* \* \*

(6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Father does not challenge the determination that a statutory ground existed to support the termination of his parental rights. Indeed, Father received a life sentence when the Child was under eight years of age. Accordingly, we hold that clear and convincing evidence exists in the record to support the trial court's termination of Father's parental rights based upon his incarceration.

B.

Having concluded that there was clear and convincing evidence supporting a statutory ground to terminate Father's parental rights, we must consider whether termination of Father's parental rights was in the best interest of the Child. In making this determination, we are guided by the following non-exhaustive list of factors:

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child . . . the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to [section] 36-5-101.

Tenn. Code Ann. § 36-1-113(i). "This list is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's parental rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). The General Assembly has also stated that "when the best interest[] of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interest[] of the child, which interests are hereby recognized as constitutionally protected." Tenn. Code Ann. § 36-1-101(d); *see also White v. Moody*, 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004) (holding that when considering a child's best interest, the court must take the child's perspective, rather than the parent's).

A number of the best interest factors weigh against Father. He had not made the adjustment of circumstances necessary to provide a stable home for the Child as evidenced by his incarceration. Tenn. Code Ann. § 36-1-113(i)(1). He had not visited the Child since 2010. Tenn. Code Ann. § 36-1-113(i)(3). The Child had not maintained a meaningful relationship with Father since 2010. Tenn. Code Ann. § 36-1-113(i)(4). The Child resides in a safe and stable foster home that expressed a desire to adopt him. Removing the Child would likely traumatize him. Tenn. Code Ann. § 36-1-113(i)(5). Father is currently incarcerated and cannot provide a safe and stable home for the Child. It is unlikely that he will be released before the Child reaches the age of majority. Tenn. Code Ann. § 36-1-

113(i)(7). Father had not paid child support consistent with the child support guidelines since his incarceration. Tenn. Code Ann. § 36-1-113(i)(9).

We do not wish to discount Father's love for the Child or his understandable reluctance in allowing the Child to proceed with adoption. However, the Child has languished in custody for far too long and should be given the opportunity to thrive in his adoptive placement. Although not raised as a separate issue on appeal, Father complains that he was never provided notice of the dependency and neglect proceedings. This argument must fail because "any previous lack of notice, even if error, was remedied by his participation with counsel at the termination hearing." *In re Adoption of M.P.J.*, No. W2007-00379-COA-R3-PT, 2007 WL 4181413, at *12 (Tenn. Ct. App. Nov. 28, 2007) (citing *In re Hoover-Crawford*, No. M2000-01655-COA-R3-CV, 2001 WL 846044, at *5 (Tenn. Ct. App. July 27, 2001), *perm. app. denied* (Tenn. Dec. 17, 2001)). With all of the above considerations in mind, we conclude that there was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child. Accordingly, we affirm the decision of the trial court.

## V. CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Percy H.

_____
JOHN W. McCLARTY, JUDGE