IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 4, 2020

**IN RE C.S.**

**Appeal from the Chancery Court for Hawkins County**
**No. 2018-AD-39      Douglas T. Jenkins, Chancellor**

_____

**No. E2019-01657-COA-R3-PT**

_____

This appeal involves the termination of a mother's parental rights. The trial court found by clear and convincing evidence that two grounds for termination were proven and that termination was in the best interest of the child. Mother appeals. We affirm and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and ANDY D. BENNETT, J., joined.

Jefferson B. Fairchild, Rogersville, Tennessee, for the appellant, Summer S.

Nicholas A. Schaefer, Kingsport, Tennessee, for the appellees, Terry and Elizabeth S.

**OPINION**

**I.   FACTS & PROCEDURAL HISTORY**

C.S. was born in September 2017. The Tennessee Department of Children's Services ("DCS") removed C.S. from her parents' care on the day she was born. Her parents ("Mother" and "Father") were facing criminal charges in Virginia for multiple counts of child abuse against C.S.'s brother, who was less than one year old when C.S. was born.

DCS filed a petition for dependency and neglect. The juvenile court entered a protective custody order placing C.S. in the temporary legal custody of DCS. Days later,

C.S.'s paternal grandmother ("Grandmother") filed an intervening petition for custody. After a hearing, the juvenile court entered an order reflecting the stipulation of Mother and Father that C.S. was dependent and neglected. According to the juvenile court's order, the court took proof as to the disposition and custody of the child and took the matter under advisement pending another hearing. In March 2018, the juvenile court entered a final dispositional order and ruled on the intervening petition for custody filed by Grandmother. The juvenile court recognized and addressed some concerns raised by DCS regarding placement in the home of Grandmother and Grandfather ("Grandparents.") Ultimately, however, after weighing the concerns of DCS, Mother's lack of credibility on the matters, and the favorable recommendation of the guardian ad litem, the juvenile court determined that the concerns did not rise to a level that would warrant denying placement with Grandparents. The juvenile court found that it was in the best interest of C.S. to be placed in the legal and physical custody of paternal Grandparents.[1]

DCS developed a permanency plan for Mother, and Mother had some one-hour supervised visits with C.S., but she went to prison when C.S. was two months old. According to her sentencing order, Mother was found guilty of the following offenses: cruelty to a child, unlawful wounding, and three counts of abuse of a child with serious injury. She received a total sentence of twenty years, with sixteen years suspended. Thus, she was ordered to serve four years incarceration with the Virginia Department of Corrections, to be followed by supervised probation. Her sentencing order provided that she was to have "no contact of any kind with the victim and/or the family he is with." Father faced similar charges and also went to prison. According to Mother, his charges were basically the same as hers but without the unlawful wounding charge. Mother's three older children were removed by the Virginia Department of Social Services. The oldest child went to live with his biological father, and the younger two were adopted by foster parents.

Meanwhile, C.S. continued to reside with Grandparents in Tennessee. On August 9, 2018, Grandparents filed a petition for termination of parental rights and adoption. Father joined in the petition for the purpose of surrendering his parental rights and consenting to the adoption. Mother and Father remained incarcerated. As grounds for termination, the petition alleged severe child abuse; parent sentenced to more than two years imprisonment for severe child abuse; persistent conditions; and failure to manifest an ability and willingness to assume custody. Grandparents further alleged that termination of parental rights was in the best interest of C.S.

The matter was heard on August 14, 2019. Mother participated and testified via telephone, as she remained incarcerated in Virginia. The only other witness to testify was

---

[1] Mother appealed the juvenile court's order to circuit court, but the record does not reflect any further activity in that proceeding.

Grandmother. By the time of trial, C.S. was nearly two years old. She had resided with Grandparents for a year and a half. Mother had no contact with C.S. during that time. Father had been released from prison approximately two months before trial. He still resided in Virginia, but Grandparents permitted him to visit with C.S. at their home while under their direct supervision. They did not leave Father alone with C.S., nor did he stay overnight at their home. Grandmother testified that C.S. was doing well and meeting all developmental milestones with no extraordinary health issues.

Testifying from prison, Mother maintained that she did not know how C.S.'s brother was injured. She testified that on the same day she was scheduled to take the child for his two-month well-child visit with a pediatrician, she noticed a knot on his head. She showed the knot to the pediatrician and suggested that the child's one-year old sibling may have caused the injury by throwing a "sippy cup" at him the day before. X-rays revealed that the child had a skull fracture, bilateral subdural hematomas, and multiple rib fractures on both sides of his body. According to medical records entered as an exhibit at the termination trial, the skull fracture was inconsistent with Mother's description of the injury. The doctor determined that the cause was "likely blunt trauma, with force significant enough to cause long fracture with depression and subdural bleeding." The child had seizures requiring admission to the hospital, related either to the bleeding or the brain injury, which further evidenced "the life-threatening nature of this injury." Regarding his rib fractures, the records state, "The total number described is 23, with at least 10 in the lateral ribs."

Upon further questioning, Mother acknowledged that DCS had been involved with one of her older children in the past. When that child was eight months old, he suffered "two broken arms." Mother suggested that the child may have had his arm stuck in the side of his crib. She claimed no knowledge of anyone harming the child and said she and Father were temporarily residing with Grandparents at that time. She testified that DCS investigated the incident but eventually returned the child to her care. Mother acknowledged that she and Father had a history of domestic violence but said that the police were never called during those incidents.

Mother testified that she entered a best interest plea in her criminal case in Virginia (although her sentencing order simply states that she "was found guilty" of the offenses). Mother had around 18 months remaining on her sentence. Thus, she acknowledged that she was not currently in a position to assume custody of C.S. However, Mother did not believe that termination was in the best interest of C.S. When asked to elaborate, Mother said, "Because I am her mother. I want a relationship with my daughter." Mother also testified that she did not believe that Grandmother was an appropriate placement for C.S.

On August 15, 2019, the trial court entered a memorandum opinion containing findings of fact and conclusions of law, and it entered a separate written order on August

- 3 -

23. The trial court began by noting that the termination petition was filed "after both mother and father were sentenced to prison terms because another one of their other children received skull fractures, subdural hematoma, seizures and serious bodily injury while in their care." The court recognized that Father joined the petition to surrender his parental rights. The court found that two grounds for termination were proven by clear and convincing evidence with respect to Mother: severe child abuse; and a prison sentence of two or more years for severe child abuse. It found that Mother entered pleas and was found guilty on what amounted to severe abuse against a sibling, and her sentence exceeded two years. The trial court found that two additional grounds for termination originally alleged in the petition – persistent conditions and failure to manifest a willingness and ability to assume custody – were inapplicable and not sufficiently proven. That ruling is not challenged on appeal.

Regarding best interest, the trial court stated that it had considered the best interest factors and concluded that they overwhelmingly weighed in favor of terminating Mother's parental rights. The trial court found that the most significant factors were the stability and safety of the home provided by Grandparents, while Mother was serving a lengthy prison sentence. The trial court found that C.S. was removed from Mother's care shortly after birth, and no meaningful relationship existed between them. It found that C.S. had resided with Grandparents since March 2018, and she was bonded with Grandparents and physically and emotionally thriving in their care. Thus, the trial court terminated Mother's parental rights to the child. Mother timely filed a notice of appeal.

## II. ISSUES PRESENTED

The only issue Mother raises on appeal is whether the trial court erred in finding that termination is in the best interest of the child. Thus, Mother does not challenge the trial court's findings regarding the two grounds for termination. In addition, Grandparents do not challenge the trial court's ruling that the two additional grounds for termination were not sufficiently proven.

Pursuant to the Tennessee Supreme Court's decision in *In re Carrington H.*, 483 S.W.3d 507, 525-26 (Tenn. 2016), "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." As such, we must review the trial court's findings regarding the two grounds for termination on which it relied, regardless of the fact that Mother does not challenge those findings on appeal. However, "we do not interpret *Carrington* to mean that this Court must also review grounds that the trial court found were *not* sufficiently proven when the party who sought termination does not challenge that ruling on appeal." *In re Colton B.*, No. M2018-01053-COA-R3-PT, 2018 WL 5415921, at *5 (Tenn. Ct. App. Oct. 29, 2018) *perm. app. denied* (Tenn. Jan. 22, 2019). Accordingly, we do not review the two grounds the trial court deemed

inapplicable, as Grandparents do not challenge those rulings.

### III. STANDARDS APPLICABLE TO TERMINATION CASES

Tennessee Code Annotated section 36-1-113 "sets forth the grounds and procedures for terminating the parental rights of a biological parent." *In re Kaliyah S.*, 455 S.W.3d 533, 546 (Tenn. 2015). According to the statute, the petitioner seeking termination of parental rights must prove two elements. *Id.* at 552. First, that party must prove the existence of at least one of the statutory grounds for termination set forth in Tennessee Code Annotated section 36-1-113(g). *Id.* Second, the petitioner must prove that termination of parental rights is in the best interest of the child, considering the best interest factors listed in Tennessee Code Annotated section 36-1-113(i). *Id.*

Because of the constitutional dimension of the parent's rights at stake, the party seeking termination must prove both of the required elements by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *see* Tenn. Code Ann. § 36-1-113(c). To be clear and convincing, the evidence must enable the finder of fact "to form a firm belief or conviction regarding the truth of the facts" sought to be established and eliminate "any serious or substantial doubt about the correctness" of the findings. *In re Bernard T.*, 319 S.W.3d at 596.

Due to this heightened burden of proof applicable in parental termination cases, we adapt our customary standard of review on appeal. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005). Appellate courts review the trial court's factual findings de novo in accordance with Tennessee Rule of Appellate Procedure 13(d), presuming each factual finding to be correct unless the evidence preponderates otherwise. *In re Carrington H.*, 483 S.W.3d at 524. Then, we make our own determination regarding "whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *Id.* (citing *In re Bernard T.*, 319 S.W.3d at 596-97). "The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness." *Id.* (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).

### IV. DISCUSSION

#### A. Grounds for Termination

##### 1. Severe Child Abuse

Tennessee Code Annotated section 36-1-113(g)(4) provides that one ground for termination exists if "[t]he parent or guardian has been found to have committed severe child abuse, as defined in § 37-1-102, under any prior order of a court or is found by the

court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]"

"As the statute makes clear, the finding of severe abuse can be based on a prior court order or on evidence of 'severe child abuse' submitted to the court hearing the termination case." *In re Brianna T.*, No. E2017-01130-COA-R3-PT, 2017 WL 6550852, at *4 (Tenn. Ct. App. Dec. 22, 2017). Thus, "a trial court may rely on a prior court order finding severe child abuse and is not required to re-litigate the issue of severe abuse during the termination trial." *In re Alexis S.*, No. M2018-00296-COA-R3-PT, 2018 WL 6267180, at *10 (Tenn. Ct. App. Nov. 30, 2018). For instance, Tennessee courts have "repeatedly applied the doctrine of res judicata to prevent a parent from re-litigating whether he or she committed severe child abuse in a termination of parental rights proceeding when such a finding has already been made in a previous dependency and neglect action." *In re Kylea K.*, No. E2017-02097-COA-R3-PT, 2018 WL 3084530, at *4 (Tenn. Ct. App. June 21, 2018).

Courts have also relied on criminal convictions to establish the ground of severe child abuse. However, a criminal conviction, standing alone, is not determinative. There must be some comparison of the criminal conviction with the definition of severe child abuse in Tennessee Code Annotated section 37-1-102.[2] The termination statute provides that this ground for termination exists if the parent "has been found to have committed severe child abuse, *as defined in § 37-1-102*, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against any child[.]" Tenn. Code Ann. § 36-1-

---

[2] Tennessee Code Annotated section 37-1-102(b) defines "severe child abuse" as:

(27) "Severe child abuse" means:
(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
   (ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(c);
(B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;
(C) The commission of any act towards the child prohibited by § 39-13-309, §§ 39-13-502 -- 39-13-504, § 39-13-515, § 39-13-522, § 39-13-527, § 39-13-531, § 39-13-532, § 39-15-302, § 39-15-402, or § 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child;
(D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring; or
(E) Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]

113(g)(4).

For instance, in *In re C.J.B.*, No. M2016-01585-COA-R3-PT, 2017 WL 2805193, at \*1 (Tenn. Ct. App. June 28, 2017), the father pled guilty to two counts of felony child neglect. At the termination trial, the trial court found that the severe child abuse ground for termination was "prima facie" established by the introduction of his convictions. *Id.* at \*4. This Court disagreed. We explained that an act prohibited by the child neglect statute under which the parent was convicted did "not, in and of itself, qualify as severe child abuse." *Id.* at \*5. "Abuse" or "neglect" within the meaning of the child neglect statute did not necessarily rise to the level of "severe child abuse" as defined by section 37-1-102. *Id.* "The trial court failed to demonstrate how the evidence support[ed] the ground of severe child abuse." *Id.* In addition, the evidence did not support a finding that his actions were "likely to cause serious bodily injury or death" within the meaning of section 37-1-102. *Id.* Therefore, we concluded that the ground of severe child abuse was not sufficiently proven.

In other cases, we have affirmed findings of severe child abuse where trial courts made the requisite comparison. *See, e.g.*, *In re Imerald W.*, No. W2019-00490-COA-R3-PT, 2020 WL 504991, at \*7 (Tenn. Ct. App. Jan. 31, 2020) ("Based on Mother's guilty plea to felony child abuse under Tennessee Code Annotated section 39-15-401 and the evidence in the record of the Child's injuries, we conclude that the evidence is clear and convincing in favor of the trial court's finding that Mother committed severe child abuse within the meaning of Tennessee Code Annotated section 36-1-113(g)(4)."); *In re O.W.*, No. W2019-01127-COA-R3-PT, 2020 WL 97727, at \*6 (Tenn. Ct. App. Jan. 9, 2020) ("Father was convicted of a crime that qualifies as severe child abuse under section 37-1-102(b)(27)(C)."); *In re Demarkus T.*, No. M2016-01839-COA-R3-PT, 2017 WL 3311313, at \*4 (Tenn. Ct. App. Aug. 3, 2017) ("Father was tried and convicted of aggravated child abuse and felony murder . . . . By definition, that conviction establishes severe child abuse that serves as the basis for termination of parental rights pursuant to Tenn. Code Ann. § 36-1-113(g)(4)."); *In re T.L.G.*, No. E2014-01752-COA-R3-PT, 2015 WL 3380896, at \*5 (Tenn. Ct. App. May 26, 2015) ("We conclude that the trial court properly considered Father's rape convictions in Ohio as acts constituting 'severe child abuse' under Tennessee law for purposes of a parental termination proceeding."); *In re Jakaeha A.L.*, No. E2012-02272-COA-R3-PT, 2013 WL 3148246, at \*6-7 (Tenn. Ct. App. June 18, 2013) (finding severe child abuse when the mother pled guilty to aggravated child abuse and voluntary manslaughter).

Here, Mother's sentencing order reflects that she was found guilty of the following felonies: unlawful wounding; cruelty/injury to a child; and three counts of abuse of a child with serious injury. The trial court found that "Mother has entered pleas and been found guilty on *what amounts to sever[e] abuse* to a sibling to the child at issue." (emphasis added) The trial court set forth the definition of severe child abuse found in Tennessee Code Annotated section 37-1-102(b)(27)(A)(i), which provides that severe

child abuse includes "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death[.]" For purposes of the statute, the trial court noted, "serious bodily injury" includes fractures of any bone and subdural bleeding. Tenn. Code Ann. § 39-15-402(c). The trial court found that C.S.'s brother was injured while in the care of Mother and Father and treated for skull fractures and subdural hematoma, for which Mother pled guilty to three counts of child abuse with serious injuries,[3] one count of unlawful wounding of a child, and one count of cruelty to a child. As such, the court concluded that the "severe child abuse" ground was sufficiently proven. We agree. *See In re Imerald W.*, 2020 WL 504991, at *6 (finding that the mother's guilty plea to felony child abuse met the definition of severe child abuse in section 37-1-102(b)(27)(A)(i)).

The case before us is analogous to *In re Roderick R.*, No. E2017-01504-COA-R3-PT, 2018 WL 1748000, at *1 (Tenn. Ct. App. Apr. 11, 2018) *perm. app. denied* (Tenn. July 12, 2018), in which a father pled guilty to three counts of inflicting serious corporal injury on a child in California. The child sustained a brain hemorrhage, fractured ribs, and other injuries. *Id.* at *1 n.3. The child was diagnosed with shaken baby syndrome, but during the termination trial in Tennessee, the father insisted that he accidentally dropped the child down the stairs. *Id.* at *1 n.2. We said:

> We agree with the trial court that clear and convincing evidence supports termination of Father's parental rights based upon severe child abuse. The felony convictions in the record clearly indicate that Father pled guilty to three counts of willfully causing corporal injuries to J.R., resulting in great bodily injury. Regardless of Father's attempts to explain the circumstances surrounding J.R.'s injuries, the fact remains that Father pled guilty to the atrocious crime that caused J.R. to suffer severe brain injuries, multiple broken bones, facial bruising, an inability to walk or sit up, and cognitive impairment . . . . Accordingly, this Court finds that clear and convincing evidence supports termination of Father's parental rights based upon the ground of severe child abuse.

---

[3] The three counts of child abuse with serious injury referenced Virginia Code Annotated section 18.2-371.1, which provides, in pertinent part:

> Any parent, guardian, or other person responsible for the care of a child under the age of 18 who by willful act or willful omission or refusal to provide any necessary care for the child's health causes or permits serious injury to the life or health of such child is guilty of a Class 4 felony. For purposes of this subsection, "serious injury" includes but is not limited to (i) disfigurement, (ii) a fracture, (iii) a severe burn or laceration, (iv) mutilation, (v) maiming, (vi) forced ingestion of dangerous substances, and (vii) life-threatening internal injuries.

*Id.* at *14.

We likewise find that the ground of severe child abuse was proven by clear and convincing evidence considering Mother's guilty pleas and the evidence of the child's injuries. We now turn to the second ground for termination found by the trial court.

### 2.    Sentence for Conduct Amounting to Severe Child Abuse

When the petition was filed, Tennessee Code Annotated section 36-1-113(g)(5) (2018) provided that an additional ground for termination applied if:

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian,[4] that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian[.]

The statute "requires that the sentence of imprisonment be 'for conduct against the child . . . that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102.'" *In re Shyronne D.H.*, No. W2011-00328-COA-R3-PT, 2011 WL 2651097, at *9 (Tenn. Ct. App. July 7, 2011) (quoting Tenn. Code Ann. § 36-1-113(g)(5)). "[S]ome court order, either by a prior court or the court hearing the termination petition, must find that the conduct underlying the conviction constituted severe child abuse as defined by section 37-1-102." *Id.*

As discussed in the previous section, Mother was sentenced to more than two years' imprisonment for conduct against C.S.'s sibling that meets the definition of severe child abuse set forth in Tennessee Code Annotated section 37-1-102. As such, this ground for termination was also sufficiently proven. *See In re Adrian M.-M.*, No. W2019-00931-COA-R3-PT, 2019 WL 5595846, at *11 (Tenn. Ct. App. Oct. 30, 2019) (concluding that the crime for which the parent was convicted fell "within the definition of severe child abuse at Tenn. Code Ann. § 37-1-102 as required by the applicable ground for termination of parental rights").

---

[4] The statute has since been amended to apply to imprisonment for conduct against "a child." *See* Tenn. Code Ann. § 36-1-113(g)(5) (2020).

## B.    Best Interest

When at least one ground for termination has been proven by clear and convincing evidence, "the court next determines whether the proof amounts to clear and convincing evidence that terminating parental rights is the best interests of the child." *In re Gabriella D.*, 531 S.W.3d 662, 681 (Tenn. 2017) (citing *In re Carrington H.*, 483 S.W.3d at 523).    Courts consider nine statutory factors set forth in Tennessee Code Annotated section 36-1-113(i) when conducting the best interest analysis.   *Id.*   In doing so, we must bear in mind that the child's best interest must be viewed from the perspective of the child, not the parent.   *Id.*   If the best interest of the child and the interest of the adults conflict, such conflict must always be resolved in favor of the child.   *Id.* at 681-82.

Here, the trial court's written order states that the court carefully considered the best interest factors set forth in the termination statute and determined that they overwhelmingly weighed in favor of termination.   The court found that the most significant factors in its analysis were the stability and safety of the home provided by Grandparents, while Mother was serving a lengthy prison sentence.   The trial court noted that Mother was currently serving an imposed sentence of twenty years.   It found that C.S. was removed from Mother's care and custody shortly after birth and that Mother had remained incarcerated throughout the entirety of the child's life.   As such, the trial court found that Mother did not have any meaningful relationship with the child.   The trial court found that C.S. had remained in the care of Grandparents since March 2018, and a change of caretakers and physical environment would likely have a detrimental effect on the child's emotional and psychological well-being, adverse to her best interest.   The trial court found that C.S. has bonded with Grandparents and is thriving, physically and emotionally, in their care.   Therefore, the trial court found that it is not in the best interest of the child for Mother to regain custody, care, or control of her.   To the contrary, the trial court found that it was "in the overwhelming best interests of the child" for termination to occur.

On appeal, Mother does not dispute the trial court's individual best interest findings.   Instead, she argues that the trial court "did not adequately consider" that Father was charged with and convicted of similar crimes, and yet Grandparents planned to allow him to maintain a relationship with the child but deny the same opportunity to Mother once she was released from prison.   She also argues that the trial court failed to consider Grandmother's criminal history.

The proof at trial established that Grandmother was charged with a crime at age seventeen and found not guilty after a jury trial.   She had no criminal record since that incident.   Notably, when the juvenile court placed C.S. in Grandparents' custody, it specifically addressed that incident in its final order and nevertheless found that it was appropriate to place C.S. in the home.

- 10 -

One of the most significant factors in the trial court's decision was "the stability and safety of the home provided by [Grandparents]," in addition to the fact that Father joined in the petition to surrender his parental rights and consent to adoption. We discern no error in the trial court's best interest analysis, even considering Grandmother's history and the fact that Grandparents permitted Father to have short visits with C.S. while under their direct supervision. At this stage, the question is not whether it is in the best interest of the child to have visits with Father, or whether that situation is fair to Mother.[5] The relevant question is whether it is in the best interest of C.S. to terminate Mother's parental rights. The evidence clearly and convincing establishes that it is.

## V. CONCLUSION

For the aforementioned reasons, the decision of the chancery court is affirmed and remanded. Costs of this appeal are taxed to the appellant, Summer S., for which execution may issue if necessary.

s/ Carma Dennis McGee
CARMA DENNIS MCGEE, JUDGE

---

[5] This Court rejected a similar argument by a father in *In re Braxton M.*, 531 S.W.3d 708, 736-37 (Tenn. Ct. App. 2017):

[O]n appeal, Father appears to couch the issue of whether the Children will continue to see Mother once they are adopted by Maternal Grandparents as a claim of unfairness to Father. He cites no specific factor in the best interest analysis as affected by the potential for Mother's continued presence in the Children's lives. As Maternal Grandparents point out, such a "fairness" argument as to Father is irrelevant within the best interest analysis because, upon the determination of clear and convincing evidence of a statutory ground for termination of Father's parental rights, Father's interest and those of the Children diverge, with the focus shifting to the best interest of the Children. *See In re Audrey S.*, 182 S.W.3d at 877.
        . . . . As the trial court noted, Mother surrendered her parental rights to the Children during the pendency of this action. Father cites no evidence, and none is indicated in the record, that Mother's supervised presence in Maternal Grandparents' home posed a risk of harm to the Children.