IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 2, 2022

**IN RE KHLOE O.**

**Appeal from the Chancery Court for Warren County**
**No. 781-A    Larry B. Stanley, Jr., Judge**
_____

**No. M2021-01125-COA-R3-PT**
_____

This appeal involves a petition to terminate parental rights and for adoption. The chancery court found by clear and convincing evidence that a ground for termination was proven and that termination was in the best interests of the child. The mother appeals. We vacate and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and KRISTI M. DAVIS, JJ., joined.

Sheila F. Younglove, Dunlap, Tennessee, for the appellant, Summer C. K.

Bailey D. Barnes, McMinnville, Tennessee, for the appellees, Michael B. and Heather B.

**OPINION**

I.    **FACTS & PROCEDURAL HISTORY**

The relevant facts in this appeal began with proceedings in the juvenile court. In June 2018, the Department of Children's Services ("DCS") became involved with Ms. Summer C. K. ("Mother") and her two children when it received a referral alleging environmental neglect, drug exposure, and lack of supervision. The two children involved were Khloe and Ashton.[1]    A child protective services investigator ("the CPSI") soon

_____

[1] Khloe was born in 2016, and Ashton was born in 2018. The children had different fathers. Since this appeal involves the termination of parental rights to Khloe only, we will focus on the facts as they relate to her.

discovered that neither child actually lived with Mother at the time. Khloe resided with the maternal grandparents, while Ashton resided with his father and his paternal grandparents. As for Khloe, the CPSI contacted the maternal grandparents and visited their home. The CPSI determined that the home was unsafe for the child, describing it as "deplorable." The CPSI asked the maternal grandmother to submit to a drug screen, but she refused. The CPSI then contacted and questioned Mother, who was unable to answer basic questions concerning the care of her children. She admitted to using marijuana. The CPSI also visited with Khloe's father ("Father"), but he had not been active in Khloe's life. However, he admitted to accidentally dislocating Khloe's arm when she was a baby and then neglecting to seek medical attention for her afterwards.

Following the CPSI's preliminary investigation, DCS filed a "Petition to Declare Children Dependent and Neglected and for Emergency Temporary Legal Custody or Expedited Protective Custody Hearing" in July 2018. The petition stated that the maternal great aunt and uncle ("Aunt" and "Uncle") were fit and proper persons to award temporary legal custody of Khloe. That same day, the juvenile court entered a protective custody order finding probable cause to believe that the children were dependent and neglected. Thus, the juvenile court awarded temporary custody of Khloe to Aunt and Uncle and awarded temporary custody of Ashton to his father. The court ordered that all visitation between Mother, Father, and Khloe was to be supervised.

Thereafter, Mother and Father waived their right to preliminary hearings. In September 2018, the juvenile court held a hearing where both Mother and Father stipulated that their respective children were dependent and neglected. As a result of the hearing, the juvenile court entered an adjudicatory and dispositional order in October 2018 finding by clear and convincing evidence that the children were dependent and neglected. Khloe remained in her relative placement with Aunt and Uncle, with only supervised visitation permitted with Mother and Father.[2] In July 2019, DCS filed a motion requesting that the juvenile court close the case and leave custody of Khloe with Aunt and Uncle. DCS explained that Mother and Father had done "little to nothing" to remedy the conditions that necessitated Khloe's removal. DCS further explained that it had been "over a year [since removal] and there had been virtually no progress." As a result of the motion, the juvenile court entered an order closing the case in August 2019.

In September 2020, Aunt and Uncle filed a petition for termination of parental rights in chancery court alleging that both Mother and Father had "abandoned the child at issue in this matter, pursuant to *Tennessee Code Annotated § 36-1-102*." Therefore, they requested that the parental rights of Mother and Father be terminated and that they be allowed to adopt Khloe. After Mother was appointed counsel, she filed a response to the petition alleging that Aunt and Uncle had "actively thwarted" her attempts to visit with Khloe. She also alleged that she had been seeking employment, to no avail, in order to pay

_____
[2] Ashton remained in the custody of his father.

child support. Father did not file a response. Instead, he signed a "Waiver of Interest and Notice," in which he stipulated that the adoption was in Khloe's best interests and formally terminated his rights to the child upon entry of the final order of adoption.

The chancery court held a trial on the petition in July 2021. In August 2021, the chancery court entered an order listing its findings of fact. The order listed the following findings:

1. That the Respondents have made no effort to regain custody of the minor child and have failed to engage in meaningful visitation.
2. That the Respondent, [Mother], did not interact with the minor child much during her visitations.
3. That when the Respondent, [Mother], visited with the minor child, she had two telephones with her on one occasion and was talking on both telephones instead of interacting with the child. During visitations the Respondent, [Mother], spent more time on her telephone than interacting with the child.
4. That the Respondent, [Mother], has no meaningful relationship with the minor child due to her own action.
5. That the Respondents have provided no more than token support for the minor child.
6. That the Respondent, [Mother], testified to having numerous jobs that lasted generally a few days at a time, and could not maintain employment for the purpose to provide consistent child support.
7. That . . . the Respondent, [Mother], cannot properly care for herself, much less care for the minor child.
8. That the minor child has serious medical issues, and if the minor child were placed back in the care of the Respondents, it would be a danger to the minor child.
9. That while the minor child was in the care of the Petitioners, the Petitioners have provided excellent care for the minor child, including providing life saving measures for the minor child.
10. That the Petitioners have acted as mother and father during the time the minor child has been in their care. Further that the minor child has bonded with the Petitioners, and the Petitioners have bonded with the minor child.
11. That the Petitioners have established that abandonment has occurred within the meaning of the statute by clear and convincing evidence.
12. That it is in the best interest of the minor child for the parental rights of [Father] and [Mother] to be terminated.
13. That it is in the best interest for the minor child . . . to be adopted by [Uncle] and [Aunt].
14. That the court finds testimony of the Petitioners to be credible.

In December 2021, the chancery court entered a final order granting the petition for termination and adopting the findings of fact above. However, the chancery court stated in its order that it found by clear and convincing evidence that Mother and Father had "failed, without good cause, to manifest an ability and willingness to parent the child." This ground was not alleged in the petition for termination. Additionally, the final order did not include a citation to any particular ground for termination; it only cited the statutory section for the best interest factors. The final order even failed to mention the word "abandonment," although that was the only ground alleged in the petition for termination of parental rights. The chancery court adopted its findings of fact "as though same were set out herein verbatim." However, those findings were silent as to any details regarding the frequency or timing of any visits with the child or any support paid by Mother, other than stating that she had paid "no more than token support." The findings also failed to include any citation to a statutory section, and only stated that Aunt and Uncle had "established that abandonment has occurred within the meaning of the statute by clear and convincing evidence."

Mother appealed. In accordance with Tennessee Rule of Appellate Procedure 24(c), she also filed a "Statement of Proceedings Due to No Transcript."

## II.    ISSUES PRESENTED

Mother presents the following issue for review on appeal, which we have slightly restated:

1. Whether the trial court erred in ordering that termination of Mother's parental rights was in the best interests of the child.

For the following reasons, we vacate the decision of the chancery court and remand for further proceedings consistent with this opinion.

## III.    STANDARD APPLICABLE TO TERMINATION CASES

"A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re Neveah M.*, 614 S.W.3d 659, 674 (Tenn. 2020) (quoting *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016)). "Parental rights have been described as 'far more precious than any property right.'" *Id.* (quoting *In re Carrington H.*, 483 S.W.3d at 522). "No civil action carries with it graver consequences than a petition to sever family ties irretrievably and forever." *In re Kaliyah S.*, 455 S.W.3d 533, 556 (Tenn. 2015). Nevertheless, parental rights are not absolute. *In re Carrington H.*, 483 S.W.3d at 522.

Tennessee Code Annotated section 36-1-113 "sets forth the grounds and procedures for terminating the parental rights of a biological parent." *In re Kaliyah S.*, 455 S.W.3d at 546. Pursuant to this statute, the petitioner seeking termination of parental rights must prove two elements. *Id.* at 552. First, the petitioner must prove the existence of at least one of the statutory grounds for termination set forth in Tennessee Code Annotated section 36-1-113(g). *Id.* Second, the petitioner must prove that termination of parental rights is in the best interests of the child under the factors set forth in Tennessee Code Annotated section 36-1-113(i). *Id.* Due to the constitutional dimension of the rights at stake, the petitioner seeking termination must prove both elements by clear and convincing evidence. *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010); *see* Tenn. Code Ann. § 36-1-113(c). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005), and eliminates any serious or substantial doubt about the correctness of these factual findings." *Id.* (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *State, Dep't of Children's Servs. v. Mims (In re N.B.)*, 285 S.W.3d 435, 447 (Tenn. Ct. App. 2008)).

We review the juvenile court's factual findings de novo in accordance with Rule 13(d) of the Tennessee Rules of Appellate Procedure, presuming each factual finding to be correct unless the evidence preponderates otherwise. *In re Carrington H.*, 483 S.W.3d at 524. We then make our own determination regarding "whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *Id.* (citing *In re Bernard T.*, 319 S.W.3d at 596-97). In regard to conclusions of law, "[t]he trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness." *Id.* (citing *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)).

## IV. DISCUSSION

On appeal, Mother only challenges the finding that termination of Mother's parental rights was in the child's best interests. She does not challenge the ground for termination, which was supposedly abandonment by failure to visit and failure to support.[3] Nevertheless, in accordance with *In re Carrington H.*, we must "review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re*

---

[3] The chancellor's findings of fact and final order were vague as to which definition of abandonment applied and did not cite the statute with respect to this ground for termination. However, the chancellor found that Mother "did not interact with the minor child much during her visitations" and "provided no more than token support for the minor child." In the final order terminating Mother's parental rights, the chancellor stated that Mother had "failed, without good cause, to manifest an ability and willingness to parent the child." As we have already stated, this specific ground, however, was not alleged in the petition for termination. Mother's appellate brief reflects that the ground for termination alleged was abandonment by failure to visit and failure to support.

*Carrington H.*, 483 S.W.3d at 525-26.

One ground for termination exists due to a parent's abandonment of his or her child. Tenn. Code Ann. § 36-1-113(g)(1). Under Tennessee Code Annotated section 36-1-102(1)(A), there are several alternative definitions of "abandonment." *See* Tenn. Code Ann. § 36-1-102(1)(A). Here, the relevant definition of abandonment is defined as follows:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents . . . of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents . . . either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(i). This statutory section also defines "failed to support," "failed to visit," and "failed to make reasonable payments toward such child's support." *See* Tenn. Code Ann. § 36-1-102(1)(D) and (E).

In parental termination cases, Tennessee Code Annotated section 36-1-113(k) provides that a "court shall enter an order that makes specific findings of fact and conclusions of law . . . ." When considering the ground of abandonment, this Court has held that "[s]imply stating that parent has 'abandoned the child' is insufficient." *In re S.S.-G.*, No. M2015-00055-COA-R3-PT, 2015 WL 7259499, at *12 (Tenn. Ct. App. Nov. 16, 2015); *see e.g., L.D.N. v. R.B.W.*, No. E2005-02057-COA-R3-PT, 2006 WL 369275, at *4 (Tenn. Ct. App. Feb. 17, 2006); *In re Adoption of T.L.H.*, No. M2008-01408-COA-R3-PT, 2009 WL 152475 (Tenn. Ct. App. Jan. 21, 2009) (holding that the trial court's finding that "the abandonment of the minor child . . . was willful" was not sufficient to establish "whether [the trial court] found abandonment based on failure to visit, failure to support, or both."). "[A] recitation in a final order that a parent has 'abandoned the child' is a conclusion of law, not a finding of fact." *Id.* (quoting *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *4 (Tenn. Ct. App. Dec. 23, 2003). As such, "[a] parental termination order must set forth the findings of fact that underlie the conclusions of law." *Id.* (citing *In re Adoption T.L.H.*, 2009 WL 152475, at *5 (citation omitted)). Aunt and Uncle noted that Mother does not appeal the sufficiency of the chancery court's findings of fact and conclusions of law. However, we still consider this matter in parental termination cases because a "trial court's failure to comply with [Tennessee Code Annotated section] 36-1-113(k) affects more than the standard of appellate review. It affects the viability of the appeal." *In re Zoey L.*, No. E2019-01702-COA-R3-PT, 2020 WL 2950549, at *2 (Tenn. Ct. App. June 3, 2020) (citing *In re G.N.S.*, No. W2006-01437-COA-R3-PT, 2006 WL 3626322, at *6 (Tenn. Ct. App. Dec. 13, 2006) (citation omitted)).

The chancery court made very few findings of fact relevant to the ground of abandonment and failed to make a specific finding as to whether Mother's failure to visit

or failure to support occurred in the applicable four-month period preceding the filing of the petition.  *See* Tenn. Code Ann. § 36-1-102(1)(A)(i).  The final order also failed to cite any specific statutory section for any ground for termination and then created ambiguity by referring to the failure to "manifest an ability and willingness to parent the child."  The findings of fact did state that Aunt and Uncle had established the ground of abandonment by clear and convincing evidence.  However, we have "decline[d] to conclude that mere legal conclusions fulfill the trial court's obligations or are sufficient to satisfy the directive of Tennessee Code Annotated Section 36-1-113(k)." *In re Navada N.*, 498 S.W.3d 579, 594 (Tenn. Ct. App. 2016).

This Court has held that "proceedings to terminate parental rights require individualized decision making" due to "the gravity of their consequences." *In re Audrey S.*, 182 S.W.3d at 861 (citing *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999)). Furthermore, Tennessee Code Annotated section 36-1-113(k) "explicitly requires courts terminating parental rights to 'enter an order which makes specific findings of fact and conclusions of law' whether they have been requested to do so or not." *Id.* (citing *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 653-54 (Tenn. Ct. App. 2004)).  "These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals." *Id.*  As such, "[w]hen a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law." *Id.* (citing *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003) (No Tenn. R. App. P. 11 application filed)).  "The importance of this rule is well established" and "[a] trial court's noncompliance with this rule 'fatally undermines the validity of a termination order.'" *In re K.J.G.*, No. E2015-00087-COA-R3-PT, 2016 WL 1203800, at *3 (Tenn. Ct. App. Mar. 28, 2016) (quoting *In re S.M.*, 149 S.W.3d at 639 (citations omitted)).  This rule "applies with equal force to the best interest component." *Id.* (quoting *In re B.L.R.*, No. W2004-02636-COA-R3-PT, 2005, WL 1842502, at *15 (Tenn. Ct. App. Aug. 4, 2005)).  "[A] finding on each factor is not required." *In re Kaylene J.,* No. E2019-02122-COA-R3-PT, 2021 WL 2135954, at *18 (Tenn. Ct. App. May 26, 2021); *see In re Matthew T.*, M2015-00486-COA-R3-PT, 2016 WL 1621076, at *16 (Tenn. Ct. App. April 20, 2016) (citing *In re Dominique L.H.*, 393 S.W.3d 710, 719 (Tenn. Ct. App. 2012)). However, a court "must consider all of the statutory factors, as well as any other relevant proof any party offers." *In re Gabriella D.*, 531 S.W.3d 662, 682 (Tenn. 2017).

We also note that "[i]t is not the role of this Court to parse the record in search of clear and convincing evidence to support [a petitioner's] case or to make factual findings where the trial court fails to do so." *In re Navada N.*, 498 S.W.3d at 594; *see also State v. McBee*, No. M2003-01326-COA-R3-PT, 2004 239759, at *6 (Tenn. Ct. App. Feb. 9,2004) (noting that when a trial court fails to make findings of fact on an issue "we cannot simply review the record de novo and determine for ourselves where the preponderance of the

evidence lies").  In the case at bar, the findings of fact and conclusions of law are inadequate for facilitation of appellate review, and thus our review is hampered.  "[T]he order does not comply with the applicable law and the high burden that is before the court in deciding to terminate a parent's rights." *In re Atrivium K.*, No. M2017-01046-COA-R3-PT, 2018 4037414, at *3 (Tenn. Ct. App. Aug. 23, 2018).  Therefore, "we must remand the case for the preparation of appropriate written findings of fact and conclusions of law." *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *3 (Tenn. Ct. App. Nov. 23, 2003) (citing *In re D.L.B.*, 118 S.W.3d 360, 367-68 (Tenn. 2003)).

"Although enforcement of this rule 'will unfortunately prolong the uncertainty for the child and parties . . . the termination statute and the constitutional implications require remand.'" *In re K.J.G.*, 2016 WL 1203800, at *3 (citing *In re Kadean T.*, No. M2013-02684-COA-R3-PT, 2014 WL 5511984, at *11 (Tenn. Ct. App. Oct. 31, 2014) (citation omitted)).  Accordingly, we are left with no choice but to vacate the chancery court's final order entered on December 10, 2021, and remand the case to the court for preparation of the findings of facts and conclusions of law required by Tennessee Code Annotated section 36-1-113(k).

## V.     CONCLUSION

For the aforementioned reasons, we vacate the decision of the chancery court and remand for further proceedings consistent with this opinion.  Costs of this appeal are taxed to the appellant, Summer C. K., for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE