FILED

09/19/2025

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 13, 2025 Session

## IN RE NATHANIEL D.

**Appeal from the Chancery Court for Knox County**
**No. 204393-2     Christopher D. Heagerty, Jr., Chancellor[1]**

_____

### No. E2025-00081-COA-R3-PT

_____

This is a parental rights termination case. Nathaniel D. ("the Child") is the minor child of Haleigh D. ("Mother") and Richard L. ("Father"). Mother later married Zachary D. ("Stepfather"). Meanwhile, Father sought to be a part of the Child's life. In an agreed order of paternity, the Juvenile Court for Knox County ("the Juvenile Court") stated that "any and all issues related to Custody, visitation, and child support are reserved and referred to the Custody Magistrate." The issue of child support remained unaddressed. Ultimately, Mother and Stepfather ("Petitioners," collectively) filed a petition in the Chancery Court for Knox County ("the Trial Court") seeking to terminate Father's parental rights. The Trial Court terminated Father's parental rights on the sole ground of abandonment by failure to support. Father appeals. It is uncontested that Father failed to pay any support even though he had the means to do so. However, Father has successfully asserted and proven by a preponderance of the evidence that his failure to support was not willful. We reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Reversed;
Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY, J., joined. THOMAS R. FRIERSON, II, J., filed a separate opinion concurring, in part, and dissenting, in part.

Rick A. Owens, Maryville, Tennessee, for the appellant, Richard L.

Cecilia S. Petersen and David L. Valone, Knoxville, Tennessee, for the appellees, Haleigh D. and Zachary D.

_____

[1] Chancellor Richard Armstrong originally presided but he recused himself prior to the best interest hearing for reasons unrelated to this case.

# MEMORANDUM OPINION[2]

## Background

In June 2019, the Child was born to Mother. DNA testing later confirmed that Father was the Child's father. Mother and Father had been in a relationship but never married. Mother went on to marry Stepfather. Mother has always held Stepfather out as the Child's father. By the time of trial in this matter, Father had not been allowed to meet the Child.

In August 2019, Father filed a petition in the Juvenile Court seeking to establish his parentage of the Child. In January 2021, the Juvenile Court entered an agreed order of paternity, recognizing Father as the Child's legal and biological father. The Juvenile Court stated in its order that "any and all issues related to Custody, visitation, and child support are reserved and referred to the Custody Magistrate." Father never paid any child support despite having the ability to do so. In the meantime, Father filed additional motions attempting to be involved in the Child's life. Indeed, Father has been very active throughout this case in attempting, through the courts, to see the Child. On March 28, 2022, Petitioners filed a petition in the Trial Court seeking to terminate Father's parental rights to the Child.

Petitioners and Father filed motions for summary judgment. In January 2024, the Trial Court entered an order granting, in part, Petitioners' motion for summary judgment. The Trial Court found that Petitioners had proven the ground of abandonment by failure to support against Father by clear and convincing evidence. In its order, the Trial Court stated, as relevant:

> The Court specifically finds that the Respondent is able bodied, capable of working, and earning enough to support himself and the child. Based on the documents supplied and the Requests for Admissions, the Court finds that the Respondent, [Father], did specifically state that he had the ability to pay support and that he willfully failed to do so in the time frame set out in the four months prior to the filing of the Petition.

Having found one ground for termination, the Trial Court ordered a hearing to determine the Child's best interest. The parties were ordered by the Trial Court to brief the issue of

---

[2] Rule 10 of the Rules of the Tennessee Court of Appeals provides: "This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated 'MEMORANDUM OPINION', shall not be published, and shall not be cited or relied on for any reason in any unrelated case."

whether Father had sufficiently raised the affirmative defense that his failure to pay child support was not willful, but the Trial Court never ruled on that. In October 2024, a hearing was held concerning the Child's best interest. In December 2024, the Trial Court entered an order which found by clear and convincing evidence that termination of Father's parental rights is in the Child's best interest.[3] Father timely appealed to this Court.

## Discussion

We restate and consolidate the issues on appeal into the following dispositive issues: 1) whether Father sufficiently raised the affirmative defense that his failure to pay child support was not willful; and 2) whether the Trial Court erred in finding the ground of abandonment by failure to support against Father.

A parent's right to the care and custody of his or her child is a fundamental liberty interest. *In re Carrington H.*, 483 S.W.3d 507, 521 (Tenn. 2016). However, this right is not absolute, and the state may intervene to prevent serious harm to a child. *Id.* at 522. Parental rights may be terminated upon finding at least one statutory ground for termination and, subsequently, that termination of parental rights is in the child's best interest. *Id.* at 522-23. The standard of proof required for termination of parental rights is clear and convincing evidence, which "enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *Id.* at 522 (quoting *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010) (citations omitted)). We review a trial court's factual findings *de novo* with a presumption of correctness unless the evidence preponderates otherwise, while we review questions of law *de novo* without a presumption of correctness. *Id.* at 523-24. We make our own determination as to whether the facts amount to clear and convincing evidence to support the termination of parental rights. *Id.* at 524.

The Trial Court found one ground for termination against Father, abandonment by failure to support. On March 28, 2022, when the termination petition was filed, the ground of abandonment was set out in statute as follows:

(g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and nonexclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:

---

[3] Chancellor Heagerty adopted Chancellor Armstrong's finding with respect to the ground of abandonment by failure to support.

(1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tenn. Code Ann. § 36-1-113(g)(1) (West July 1, 2021 to June 30, 2022).

Abandonment by failure to support, the specific type of abandonment at issue, was defined as follows:

(1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding, pleading, petition, or any amended petition to terminate the parental rights of the parent or parents or the guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that the parent or parents or the guardian or guardians either have failed to visit or have failed to support or have failed to make reasonable payments toward the support of the child;

\*\*\*

(D) For purposes of this subdivision (1), "failed to support" or "failed to make reasonable payments toward such child's support" means the failure, for a period of four (4) consecutive months, to provide monetary support or the failure to provide more than token payments toward the support of the child. That the parent had only the means or ability to make small payments is not a defense to failure to support if no payments were made during the relevant four-month period;

\*\*\*

(H) Every parent who is eighteen (18) years of age or older is presumed to have knowledge of a parent's legal obligation to support such parent's child or children; [and]

(I) For purposes of this subdivision (1), it shall be a defense to abandonment for failure to visit or failure to support that a parent or guardian's failure to visit or support was not willful. The parent or guardian shall bear the burden of proof that the failure to visit or support was not willful. Such defense must be established by a preponderance of evidence. The absence of willfulness

-4-

is an affirmative defense pursuant to Rule 8.03 of the Tennessee Rules of Civil Procedure[.]

Tenn. Code Ann. § 36-1-102(1) (West July 1, 2021 to May 8, 2022).

We first address whether Father sufficiently raised the affirmative defense that his failure to pay child support was not willful. Petitioners argue that he did not. In Father's answer to the termination petition, he stated, in pertinent part:

a. Respondent denies that he [h]as abandoned the child as defined by Tennessee Code Annotated § 36-1-102, and Tennessee Code Annotated § 36-1-113(g)(1). Respondent would further state that the biological Mother has withheld the child from the Respondent out of anger due to the fact that the Respondent did not wish to marry the Petitioner/Mother as she requested.
a. Respondent denies this allegation. Respondent would state that he has attempted since prior to the child's birth to establish the rights and responsibilities as the biological father of the minor child including registering on the Putative Father's Registry, attempted mediation, answering Interrogatories which included financial information for child support, Filing Petitions and Motions including a Motion for Supervised Visitation which was scheduled for hearing the day prior to the filing of the Petitioner's Petition in this Honorable Court which subsequently stayed the aforementioned hearing on the matter of visitation schedule March 29, 2022 before the Honorable Judge Irwin. Respondent would further state that the Petitioner's have changed attorneys twice making Mr. Valone the Petitioner's third attorney and filed this Petition to delay the Juvenile Court's adjudication of the matter of custody and that the Petitioner/Mother has interfered with the Respondents constitutional right to establish a relationship with the child.
b. Respondent denies the allegation that he has failed to support or make reasonable payments towards the support of the child. Respondent would further state that he has repeatedly offered through counsel to pay support due to his concerns that the child was not being properly provided for but had been denied by the Mother, however, Respondent has a saving account set up for the minor child whereas he makes regular deposits.
b. Respondent denies this allegation. Respondent would state that he has attempted since prior to the child's birth to assume the legal and physical custody and financial responsibility of this child. Petitioners have attempted to force the Respondent out of the child's life and deny this child a father/son relationship with the Respondent/Biological Father. Respondent believes it is in the best interest of this child to be able to establish this relationship.

31. Respondent denies the allegation in Paragraph 31 and all subparts.
a. Respondent denies that his lack of involvement in the child's life has been willful but rather that the child has been withheld by the Petitioners.

According to Petitioners, this was not enough to raise the affirmative defense of lack of willfulness. They point out that Father did not recite "lack of willfulness." In response, Father argues that the substance of his answer was enough to put Petitioners on notice that he was asserting lack of willfulness.

Father's answer could have been clearer. For instance, Father could have explicitly said he was raising lack of willfulness as an affirmative defense to failure to support pursuant to Tenn. R. Civ. P. 8.03 as provided by Tenn. Code Ann. § 36-1-102(1)(I). Nevertheless, we have previously said that "[w]hile . . . failure to raise an affirmative defense can result in a waiver, the key question is generally whether the opposing party had sufficient notice of the defense to attempt to rebut it." *Amber Brazilian Exp. Res., Inc. v. Crown Labs., Inc.*, No. E2011-01616-COA-R3-CV, 2012 WL 982969, at *3 (Tenn. Ct. App. Mar. 21, 2012), *perm. app. denied Aug. 15, 2012*. Father's answer, although not ideal, made clear he intended to argue that he failed to pay child support because of certain procedural and logistical roadblocks, not because of any willful refusal on his part. Whether that defense has merit is a separate issue, but Father adequately raised it. Petitioners were provided with notice that Father would argue in this fashion, and they could prepare their counterarguments accordingly. Thus, Petitioners were not ambushed by Father's defense, which he has been asserting throughout the case. We find that Father sufficiently raised lack of willfulness as an affirmative defense to the ground of abandonment by failure to support.

We next address whether the Trial Court erred in finding the ground of abandonment by failure to support against Father. The relevant four-month period for examination in this case was November 28, 2021 through March 27, 2022, the day before the termination petition was filed. *See In re Jacob C.H.*, No. E2013-00587-COA-R3-PT, 2014 WL 689085, at *6 (Tenn. Ct. App. Feb. 20, 2014), *no appl. perm. appeal filed* ("[T]he applicable four month window for determining whether child support has been paid in the context of . . . failure to support includes the four months preceding the day the petition to terminate parental rights is filed but excludes the day the petition is filed."). It is undisputed that Father paid no child support during the relevant four-month period despite having the ability to pay. The only contested point is whether Father has established that his failure to pay was not willful. Father argues, among other things, that he relied on a January 2021 agreed order of paternity entered by the Juvenile Court stating that "any and all issues related to Custody, visitation, and child support are reserved and referred to the Custody Magistrate." After that, child support simply went unaddressed.

-6-

In response, Petitioners observe that a parent has an obligation to support his or her child even in the absence of a child support order. *See* Tenn. Code Ann. § 36-1-102(1)(H). Mother has also filed supplemental authority with this Court, the case of *In re Kiara C.*, No. E2013-02066-COA-R3-PT, 2014 WL 2993845 (Tenn. Ct. App. June 30, 2014), *no appl. perm. appeal filed*. In *Kiara C.*, a father appealed the termination of his parental rights to his child, including the ground of abandonment by failure to support. *Id*. at *3. An Illinois court had previously ordered the father to pay all future necessary medical, dental, orthodontic, prescription drug, and optical expenses incurred by or on behalf of the child, even as the court reserved the issue of child support due to the father's pending discharge from the military. *Id*. at *8. The father did not pay any support during the applicable timeframe. *Id*. On appeal, he argued that the mother waived the issue of child support and never presented him with any invoices for the expenses he was ordered to pay. *Id*. at *8-9. We rejected these arguments, stating as pertinent that the Illinois court had reserved rather than waived the issue of child support and that, in any event, a parent has the duty to support his or her child regardless of whether there is a child support order in place. *Id*.

Tennessee law is indeed crystal clear that a parent has a duty to support his or her child even in the absence of a court order. However, the issue in this case is not the absence of a court order, but the presence of one and its implications. In January 2021, the Juvenile Court entered an agreed order of paternity recognizing Father as the Child's legal and biological father. The Juvenile Court stated that "any and all issues related to Custody, visitation, and child support are reserved and referred to the Custody Magistrate." That language is all-encompassing and clearly reflects that "any and all" issues including child support are reserved for future determination. Regrettably, this unresolved state of affairs remained ongoing. Petitioners argue that *In re Kiara C.* supports their position that, even if a court reserves the issue of child support, a parent is not relieved of a duty to support. Nevertheless, we find critical distinctions between *In re Kiara C.* and the present matter. In *Kiara C.*, the Illinois court reserved the issue of child support but ordered the father to pay a raft of medical expenses. *In re Kiara C.*, 2014 WL 2993845, at *8. In the appeal at bar, Father was under no court-ordered similar obligation for expenses. Furthermore, we note the all-encompassing language used by the Juvenile Court in this case. The Juvenile Court reserved "<u>any and all issues</u> related to Custody, visitation, and child support. . . ." (Emphasis added). A reasonable litigant reading the Juvenile Court's order could interpret it to mean just what it said—any and all issues including child support were reserved. We see no other legitimate way to interpret this language. That is, these issues were postponed, put off, and left for future resolution.

To be clear, Father has a duty to support the Child, just like any parent in Tennessee has a duty to support his or her children. In this Opinion, we make no determination as to what Father owes in child support, retroactively or otherwise. The dispositive issue is

whether Father's failure to pay support during the relevant four-month period was willful. The Juvenile Court's January 2021 order reserved any and all issues concerning child support. Unfortunately, these issues were not expeditiously addressed but were simply left open-ended. It was not unreasonable for Father to rely upon the court's order. In view of the specific circumstances of this case, we find that Father has met his burden of proving by a preponderance of the evidence that his failure to pay child support in the relevant four-month period was not willful. The ground of abandonment by failure to support was not proven against Father by the requisite clear and convincing evidence. We reverse the sole ground for termination found against Father. As no grounds for termination have been proven, we do not advance to a best interest analysis. The judgment of the Trial Court is reversed.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the Appellees, Haleigh D. and Zachary D.

_____
D. MICHAEL SWINEY, CHIEF JUDGE